1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  DAUDA ILIYA,

Case No. 2:22-cv-01305 DC CSK PS

12              Plaintiff,

13      v.

FINDINGS AND RECOMMENDATIONS
GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT; AND

14  COUNTY OF SACRAMENTO, et al.,

15              Defendants.

ORDER RE: PLAINTIFF'S MOTIONS TO
STAY AND TO ADDRESS CLERICAL
ERRORS

16

17

(ECF Nos. 49, 55, 63)

18

19          Pending before the Court is a motion for summary judgment on all claims by

20  Defendants County of Sacramento; Anne Marie Schubert in her official capacity as the

21  prior District Attorney for Sacramento County; Scott R. Jones in his official capacity as

22  the prior Sheriff for Sacramento County Sheriff's Department; and Matthew McCune in

23  his individual capacity and in his official capacity as a Deputy Sheriff of Sacramento

24  County.[1] (ECF No. 49.) Plaintiff Dauda Iliya, who is proceeding without counsel, brings

25  claims for an alleged violation of his Fourth Amendment right to be free from unlawful

26  seizures (false arrest), malicious prosecution, intentional infliction of emotional distress,

27  _____

28  [1]  This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R.
Civ. P. 72, and Local Rule 302(c).

1

and "supervisory liability." First Amended Compl. ("FAC") (ECF No. 11). The motion for summary judgment is fully briefed. (ECF Nos. 49, 53, 62.) Plaintiff has also filed a motion to stay the motion for summary judgment, and a motion to address clerical errors. (ECF Nos. 55, 63.) For the reasons that follow, the Court DENIES Plaintiff's motion to stay and motion to address clerical errors and RECOMMENDS GRANTING Defendants' motion for summary judgment.

## I.    BACKGROUND

### A.    Factual Background[2]

On June 8, 2020, Defendant McCune was on patrol and received a notification or "hit" from the Vigilant Solutions License Plate Reader ("LPR") program indicating that a stolen vehicle was traveling eastbound on 47th Avenue in Sacramento, California from Martin Luther King Jr. Boulevard. Decl. of Matthew McCune ¶ 5 (ECF No. 49-3). The vehicle was a Scion SB, with the California License plate number 5NMB022. *Id.* After receiving the hit from the LPR system, Defendant McCune observed the Scion XB traveling eastbound on 47th Avenue. *Id.* ¶ 12. Defendant McCune continued following the vehicle and conducted a records check of the vehicle with dispatch to confirm that it was reported stolen. *Id.* ¶ 14. Dispatch confirmed that the vehicle was reported stolen on June 3, 2020. *Id.*; *see* Pl. Opp'n, Exhs. at 32-33 (ECF No. 55). Defendant McCune broadcasted on his radio that he was traveling behind a stolen Scion and waited for additional units to respond to his location. McCune Decl. ¶ 15. He followed the vehicle eastbound on 47th Avenue toward Stockton Boulevard, when the driver turned southbound and into a business complex and parked. *Id.* ¶ 17.

Defendant McCune activated his overhead emergency vehicle lights and initiated a "high-risk" vehicle stop. *Id.* ¶ 18. A stop of a suspected vehicle is considered "high-risk"

---

[2]    In their reply, Defendants argue that their statement of undisputed facts should be adopted in its entirety because Plaintiff's response to the statement of undisputed facts did not comply with the Local Rules. (ECF No. 62 at 2.) Where Defendants' facts are supported by the record, they will be considered undisputed. *See Caldwell-Parker v. Surprise Police Dep't*, 2022 WL 18110867, at *2 n.3 (D. Ariz. Dec. 2, 2022).

because of the risks to the officers and the public, because the suspect may attempt to evade, could resist arrest by use of a firearm, or the suspect may use the vehicle as a weapon to avoid arrest. *Id.* ¶ 16. He gave verbal commands to the driver to put his hands up, open the door, and step out of the vehicle. *Id.* ¶ 18; McCune Decl., Exh. 2A, McCune Video 0:50-0:58. Defendant McCune drew his weapon when he gave these commands. McCune Decl. ¶ 18. Plaintiff was handcuffed without incident and placed in the back of Defendant McCune's patrol vehicle. *Id.*; McCune Video 1:33-1:52. Defendant McCune asked Plaintiff if he had ID on him. McCune Video 2:15-2:30. Plaintiff asked Defendant McCune why he was being arrested. *Id.* Defendant McCune told Plaintiff he was being detained because the vehicle he was driving was reported stolen. McCune Decl. ¶ 20; McCune Video 2:15-2:30. Plaintiff responded "WOW," and expressed shock that the vehicle was stolen. McCune Video 2:17-2:30. Defendant McCune asked Plaintiff whether he had proof of ownership paperwork for the vehicle inside the car. McCune Decl. ¶ 21; McCune Video 3:35-3:40. Plaintiff said no. *Id.* Defendant McCune asked Plaintiff where the paperwork was located and Plaintiff replied that it was "secure." McCune Decl. ¶ 21; McCune Video 3:40-3:45. Plaintiff then stated that he wanted to speak to a lawyer. McCune Decl. ¶ 21; 3:45-3:50. Plaintiff was detained for about 40 minutes before Defendant McCune transported him to the Sacramento County Main Jail for booking. McCune Decl. ¶ 22. Plaintiff was charged with receiving stolen property and motor vehicle theft. *Id.* ¶ 23. Plaintiff was searched, and $1,309.53 was found on his person. McCune Decl. ¶ 24; McCune Video 22:20-22:30; *see* FAC ¶ 16.

Plaintiff disputes that the vehicle was stolen. Plaintiff states that he purchased the vehicle in June 2020 from a person identified as James Lahey. FAC ¶ 8. Plaintiff received the key, vehicle, and title in exchange for cash at the time of purchase. *Id.* ¶ 9. Plaintiff alleges that the criminal case against him was dismissed at the preliminary hearing for lack of evidence. *Id.* ¶ 20.

   **B.    Procedural Background**

Plaintiff filed his FAC on November 22, 2022. *See* FAC. Defendants filed an

1   answer on December 13, 2022. (ECF No. 14.)

2       Defendants filed their motion for summary judgment on August 6, 2024. (ECF No.

3   49.) On August 22, 2024, Plaintiff filed an opposition. (ECF No. 53.) Because Plaintiff's

4   opposition was over twenty pages long in violation of the undersigned's standing orders,

5   the Court issued an order rejecting this opposition and instructing Plaintiff to file an

6   opposition that complied with the standing orders. 8/27/2024 Order (ECF No. 54).

7   Plaintiff was warned that if he did not file a revised opposition brief that complied with

8   these requirements, the Court would limit its review to the first twenty pages of Plaintiff's

9   first opposition. *Id.* Plaintiff filed a new opposition on September 6, 2024 (ECF No. 58),

10  which unfortunately still did not comply with the Court's standing orders. Defendants

11  timely filed their reply on September 16, 2024, correctly responding to the first twenty

12  pages of Plaintiff's first opposition. (ECF No. 62.)

13      On August 15, 2025, Plaintiff filed a motion to change venue due to alleged

14  judicial bias (ECF No. 51), and on September 13, 2024, he filed a motion for recusal of

15  the undersigned (ECF No. 61). The Court denied both motions on February 13, 2025.

16  2/13/2025 Order (ECF No. 67). The Court found that there was no basis for recusal and

17  that the Eastern District of California is the proper venue for this case. *Id.* at 4, 5.

18      On August 28, 2024, Plaintiff filed a motion to stay summary judgment pending

19  the resolution of Plaintiff's motion to change venue. (ECF Nos. 52, 55.) Plaintiff filed a

20  motion to address clerical errors on September 23, 2024. (ECF No. 63.)

21  **II.     LEGAL STANDARDS**

22      **A.     Summary Judgment Standards**

23      Summary judgment is appropriate when there is "no genuine dispute as to any

24  material fact and the mov[ing party] is entitled to a judgment as a matter of law." Fed. R.

25  Civ. P. 56(c). The principal purpose of summary judgment is to dispose of factually

26  unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

27  Therefore, the "threshold inquiry" is whether there are any factual issues that could

28  reasonably be resolved in favor of either party, or conversely, whether the facts are so

one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-52 (1986). Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

In a summary judgment motion, the moving party must inform the court of the basis for the motion and identify the portion of the record that it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574. 585 (1986). To establish the existence of genuine issue of material fact, the opposing party may not rely upon the allegations or denials of its pleadings, but must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material. *See* Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact might affect the outcome of the suit and a reasonable jury could return a verdict for the opposing party. *See Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). For the moving party to succeed, the court must conclude that no rational trier of fact could find for the opposing party. *Matsushita*, 475 U.S. at 587.

All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). In addition, while a verified complaint may be considered as evidence at the summary judgment stage "if it is based

1    on personal knowledge and if it sets forth the requisite facts with specificity," *Lopez v.*

2    *Smith*, 203 F.3d 1122, 1132 n. 14 (9th Cir. 2000) (en banc), an unverified complaint

3    cannot be considered as evidence. *Moran v. Selig*, 447 F.3d 748, 759-60 (9th Cir. 2006)

4    (citing *Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995); *Lew v.*

5    *Kona Hospital*, 754 F.2d 1420, 1423-24 (9th Cir. 1985)).

6        **B.    Video Evidence**

7        The parties submitted video evidence. (ECF Nos. 49-4, 56.) Defendants

8    submitted video footage from Defendant McCune's vehicle of Plaintiff's arrest and

9    transport to jail that occurred on June 8, 2020. Plaintiff submitted multiple videos,

10   including videos of him having trouble accessing the Pacer website, videos of him using

11   a website to look at vehicles that are for sale, and a video of a drone flying over his

12   home.

13       The Supreme Court stated that when ruling on motions for summary judgment,

14   courts "should [ ] view[ ] the facts in the light depicted by the videotape." *Scott v. Harris*,

15   550 U.S. 372, 380-81 (2007) (following review of videotape, holding deputy acted

16   reasonably in terminating car chase and did not violate respondent's Fourth Amendment

17   right against unreasonable seizure). However, courts are still required to draw all

18   reasonable inferences in the nonmovant's favor. *Vos v. City of Newport Beach*, 892 F.3d

19   1024, 1028 (9th Cir. 2018) ("The record is viewed in the light most favorable to the

20   nonmovants . . . so long as their version of the facts is not blatantly contradicted by the

21   video evidence."); *Williams v. Las Vegas Metro. Police Dep't*, 2016 WL 1169447, at *4

22   (D. Nev. Mar. 22, 2016) ("[t]he existence of the video does not change the usual rules of

23   summary judgment:  in general, the court will draw all reasonable inferences from the

24   video in plaintiff's favor") (*citing Blankenhorn v. City of Orange*, 485 F.3d 463, 468 n.1

25   (9th Cir. 2007)). Thus, the Court considers the video footage, drawing all reasonable

26   inferences in Plaintiff's favor.

27   / / /

28   / / /

1    **III.    DISCUSSION**

2            Defendants move for summary judgment on all claims. The FAC raises the

3    following claims: (1) a Fourth Amendment false arrest claim under 42 U.S.C. § 1983

4    against "all public entity defendants," which are presumed to be the County of

5    Sacramento, Sheriff Jones in his official capacity, and Defendant McCune; (2) malicious

6    prosecution under 42 U.S.C. § 1983 against all Defendants; (3) intentional infliction of

7    emotional distress against all Defendants; and (4) a "supervisory liability" claim for failure

8    to train against all "supervisory defendants," which the Court construes to be Sheriff

9    Jones, the County, and District Attorney Schubert. FAC at 6-14. In the FAC, the phrase

10   "false imprisonment" and "wrongful imprisonment" are used, but no facts are alleged as

11   to imprisonment. *Compare* FAC ¶¶ 1, 2, 29, 62, 69, *with* FAC generally. Instead, the

12   FAC includes a bail allegation that suggests Plaintiff was not imprisoned. FAC ¶ 19.

13   Because the FAC does not allege any facts related to false or wrongful imprisonment,

14   and no argument is raised related to such a claim, the Court concludes that no false or

15   wrongful imprisonment claim has been alleged.

16           Plaintiff's claims are raised against the following defendants:  the County of

17   Sacramento; Anne Marie Schubert in her official capacity as District Attorney for the

18   County of Sacramento; Scott R. Jones in his official capacity as the Sheriff for the

19   County of Sacramento; and Matthew McCune, a Deputy Sheriff, in his individual and

20   official capacities. FAC at 2-3. In the "Parties" section of the FAC, the Sacramento

21   Sheriff's Office is listed as a separate defendant. *See* FAC at 2. The FAC does not,

22   however, make separate allegations as to the Sheriff's Office and does not identify the

23   Sheriff's Office as a defendant in the caption. *See* FAC and FAC at 1. In addition, the

24   Sacramento County Sheriff's Office was not served. *See* Docket. Therefore, because a

25   suit against the county police department is essentially a suit against the county, and the

26   FAC has already named Sacramento County as a separate defendant, the Court

27   construes the FAC's one-time reference to the Sacramento Sheriff's Office as a separate

28   defendant to be duplicative of Sacramento County, which is named as a separate

defendant. *See Gunn v. Stanton Correctional Facility*, 2021 WL 1402141, at *2 (E.D. Cal. Apr. 4, 2021); *Cantu v. Kings County*, 2021 WL 411111, at * 1 (E.D. Cal. Feb. 5. 2021) (after recognizing split within district courts regarding whether naming a sheriff's department is redundant or duplicative of the municipal entity, concluding claims against a municipality and its respective police departments are treated as claims against the municipality and not subject to suit under 1983); *see also Kamath v. United States Dep't of Homeland Security*, 2024 WL 1077328, at *2 (N.D. Cal. Mar. 12, 2024) (agreeing to substituting the city and county in place of the police department as a defendant where plaintiff did not object).

### A.    Preliminary Issues

#### 1.    Plaintiff's Opposition

On August 22, 2024, Plaintiff filed an opposition to Defendants' summary judgment motion. (ECF No. 53.) The Court issued an order rejecting Plaintiff's opposition because it exceeded the page limit allowed for oppositions in the undersigned's standing orders. 8/27/2024 Order. The Court gave Plaintiff the opportunity to file a revised opposition limited to 20 pages. *Id.* at 2. The Court further instructed Plaintiff he could attach his Statement of Disputed Facts following the requirements of Local Rule 260(b), his response to Defendants' Statement of Undisputed Facts following the requirements of Local Rule 260(b), and exhibits to his revised opposition brief. *Id.* at 3. Plaintiff was warned that if he failed to file a revised opposition brief limited to 20 pages or less, the Court would only consider the first 20 pages of the document titled "Plaintiff's Opposition to Defendants' Motion for Summary Judgment" filed at ECF No. 53 on August 22, 2024, Plaintiff's Statement of Disputed Facts, and Plaintiff's exhibits. *Id.*

On September 6, 2024, Plaintiff filed a second opposition brief that again significantly exceeded the 20 page-limit. Pl. Second Opp'n (ECF No. 58). Plaintiff's second opposition brief was 29 pages long, consisting of "Plaintiff's Opposition to

/ / /

/ / /

Defendant's Motion for Summary Judgment" that is six (6) pages long[3] and "Plaintiff's Points & Authorities" that is 23 pages long. *Id.* at 1-30. Accordingly, as expressly provided in the August 27, 2024 Order, the Court will consider only the first 20 pages of Plaintiff's first opposition, filed at ECF No. 53 on August 22, 2024, Plaintiff's Statement of Disputed Facts, and Plaintiff's Exhibits. 8/27/2024 Order. The Court will not consider Plaintiff's second opposition filed on September 6, 2024, or the documents attached to the second opposition. *See id.*; Pl. Second Opp'n (ECF Nos. 58, 58-1).[4]

   2.    <u>New Claims Raised in Plaintiff's Opposition and Plaintiff's Request to Amend</u>

Plaintiff also appears to attempt to raise new claims in his summary judgment opposition for violation of the Bane Act, "fraud (machine $ miscount)," conversion, and negligence. Pl. Opp'n at 3 (ECF No. 53). This is improper because these claims were not pled in the FAC. Plaintiff may not raise new claims, factual allegations, or theories in an opposition to a motion for summary judgment. *See Pickern v. Pier 1 Imps. (U.S.), Inc.*, 457 F.3d 963, 969 (9th Cir. 2006); *Coleman v. Quaker Oats*, 232 F.3d 1271, 1294 (9th Cir. 2000); *see also Henderson v. Lizarraga*, 2021 WL 843461, at *12 (E.D. Cal. Mar. 5, 2021). Therefore, the Court will not consider the new claims Plaintiff attempts to raise in his opposition.

In Plaintiff's statement of undisputed facts, Plaintiff requests amending his FAC, which is not the proper way to raise this request. *See* Pl. Stmt. Undisputed Facts at 2 (ECF No. 53-2). Plaintiff has not filed a motion to amend his FAC, and has not provided a copy of the proposed amended complaint for the Court to evaluate. The Court further notes that Plaintiff already amended his Complaint once. The Court's pretrial scheduling order provided that no further amendment of the pleadings would be allowed without

---

[3]  Though Plaintiff numbered this portion of his document as seven (7) pages long, the Court does not count the first page, which consists only of the caption. (*See* ECF No. 58 at 1.)

[4]  The documents attached to Plaintiff's second opposition brief were not included in calculating the length of the opposition brief. (*See* ECF No. 58 at 31-50 & ECF No. 58-1.)

1   leave of Court, and a showing of good cause. (ECF No. 18 at 4.) At this stage in the

2   proceedings, good cause is not shown to amend the FAC. *See Gonzales v. Koranda*,

3   2024 WL 3861988, at *12 (E.D. Cal. Aug. 19, 2024). Therefore, Plaintiff's request to

4   amend his FAC is denied.

5           3.    Plaintiff's Motion to Address Clerical Errors (ECF No. 63)

6           On September 23, 2024, Plaintiff filed a motion to address clerical errors that

7   raises three issues. (ECF No. 63.) Defendants have not filed a response or opposition to

8   this motion. *See* Docket.

9           First, Plaintiff states that his documents were improperly filed as a single, 50 page

10  document at ECF No. 59 rather than as separate filings. (ECF No. 63). ECF No. 59,

11  however, is Plaintiff's notice of lodging of video/audio files in support of Plaintiff's second

12  opposition. It appears that Plaintiff is referring to ECF No. 58, which is Plaintiff's second

13  opposition. Regardless, as discussed above, the Court did not count Plaintiff's exhibit

14  attachments in calculating the 20 page limit for opposition briefs. Even if Plaintiff's

15  second opposition had been filed as separate documents rather than as a single

16  document, it still would not have complied with the undersigned's page limits.

17          Second, Plaintiff also states that "Plaintiff's Exhibits #3 in Support of Opposition to

18  Defendant's Motion for Summary Judgment" was not filed on the docket. The document

19  titled "Plaintiff's Exhibits #3 in Support of Opposition to Defendant's Motion for Summary

20  Judgment" was filed on August 28, 2024 with Plaintiff's motion to stay at ECF No. 55.

21  (ECF No. 55 at 5-152.) Because these exhibits were filed on August 28, 2024 before

22  Plaintiff received the Court's August 27, 2024 order addressing Plaintiff's first opposition,

23  and because Plaintiff's first opposition was filed on August 22, 2024, the Court will

24  consider the document titled "Plaintiff's Exhibits #3 in Support of Opposition to

25  Defendant's Motion for Summary Judgment."

26          The Court further directs the Clerk of Court to (1) separately file "Plaintiff's

27  Exhibits #3 in Support of Opposition to Defendant's Motion for Summary Judgment,"

28  which is currently filed as ECF No. 55 at 5-152, as a separate docket entry with a filing

1  date of August 28, 2024, which is the date stamped on ECF No. 55 at 1 and the date

2  identified by Plaintiff at ECF No. 55 at 151; and (2) remove what is currently filed at ECF

3  No. 55 at 5-152 from ECF No. 55.

4        This clerical error appears to have been an inadvertent error due to how Plaintiff

5  has submitted his various voluminous filings to the court. **To prevent these types of**

6  **errors, Plaintiff should make clear when his filings are separate documents** (e.g.,

7  by mailing different filings separately, including a cover page with instructions on which

8  documents go together, etc.), rather than mailing voluminous documents together and

9  improperly putting the burden on the Clerk's Office to try to decipher Plaintiff's

10  voluminous documents.

11       Third, Plaintiff also states that he submitted video and audio files supporting his

12  opposition that were stamped as filed on September 6, 2024, but the electronic docket

13  indicates they were filed on September 9, 2024 (*see* ECF No. 59), which Plaintiff states

14  could impact the Court's consideration of these materials. The filing date reflected on the

15  docket does not impact the Court's consideration of these materials. Plaintiff is correct,

16  however, that the docket for ECF No. 59 reflects the incorrect filing date. The Court

17  therefore grants Plaintiff's request to correct the docket entry for ECF No. 59 to reflect

18  September 6, 2024 as the filing date for Plaintiff's notice of lodging video/audio files.

19       The Court will not consider Plaintiff's video/audio files submitted at ECF No. 59

20  because these files were filed on September 6, 2024 in support of Plaintiff's second

21  opposition. As described above, the Court is not considering Plaintiff's second

22  opposition. The Court further notes that the video/audio files Plaintiff submitted with his

23  second opposition appear to be the same (with the exception of three files) as the files

24  he submitted with his first opposition. As described above, none of the video or audio

25  files submitted by Plaintiff are relevant to the Court's determination of this motion

26  because they are not related to the underlying June 8, 2020 arrest.

27       Therefore, Plaintiff's motion to address clerical errors is GRANTED IN PART as to

28  separately filing "Plaintiff's Exhibits #3 in Support of Opposition to Defendant's Motion for

1    Summary Judgment" and correcting the filing date in the docket for ECF No. 59, and the

2    remainder of Plaintiff's motion is DENIED.

3                        4.    Plaintiff's Request for Further Discovery

4         Plaintiff briefly states in his statement of undisputed facts that more discovery is

5    needed regarding certain facts. (ECF No. 53-2 at 2.) Plaintiff has repeatedly attempted to

6    extend the discovery deadline, which have been previously denied by the Court. (ECF

7    Nos. 29, 46.) Plaintiff has been warned that any additional filings related to reopening

8    discovery could result in dismissal of his case with prejudice. (ECF No. 51.) Plaintiff did

9    not meet the "good cause" standard for a modification of the scheduling order in his

10   previous requests, and nothing has changed. *See Johnson v. Mammoth Recreations,*

11   *Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Therefore, Plaintiff's request to reopen discovery

12   is denied.

13                       5.    Plaintiff's Motion to Stay (ECF No. 55)

14        Finally, Plaintiff filed a motion to stay Defendants' motion for summary judgment

15   pending resolution of Plaintiff's motion to change venue. (ECF No. 55.) On February 13,

16   2025, the Court denied Plaintiff's motion to change venue. 2/13/2025 Order. Therefore,

17   Plaintiff's motion to stay is DENIED as moot.

18        **B.    42 U.S.C. § 1983 Standards**

19        42 U.S.C. § 1983 provides a cause of action for the deprivation of rights,

20   privileges, or immunities secured by the Constitution or laws of the United States by a

21   person acting "under color of any statute . . . ." *Gomez v. Toledo*, 446 U.S. 635, 638

22   (1980). Section 1983 claims must demonstrate the defendant (1) acted under color of

23   state law; and (2) caused a plaintiff to be deprived of a right secured by the Constitution

24   or laws of the United States. *See Lindke v. Freed*, 601 U.S. 187, 194 (2024). A

25   supervisor may not be held individually liable under § 1983 unless he is personally

26   involved in a constitutional deprivation or there exists a "sufficient causal connection"

27   between the supervisor's wrongful conduct and the constitutional deprivation. *Keates v.*

28   *Koile*, 883 F.3d 1228, 1242-43 (9th Cir. 2018).

1

2

**C.    Claims Against Sacramento County Sheriff, Sacramento County, and Sacramento County District Attorney**

3

1.    Sacramento County Sheriff

4    Plaintiff brings claims against Sacramento County Sheriff Jones in his official

5    capacity. "[A] suit against a state official in his or her official capacity is not a suit against

6    the official but rather is a suit against the official's office. As such, it is no different from a

7    suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)

8    (citation omitted); *see Kentucky v. Graham*, 473 U.S. 159, 166 (1985). If an individual is

9    sued in his official capacity as a municipal official and the municipal entity is also sued,

10    the claims against the individuals are duplicative and should be dismissed. *Vance v.*

11    *County of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996); *see Johnson v. City of*

12    *Vallejo*, 99 F.Supp.3d 1212, 1219 (E.D. Cal. 2015).

13    Defendants argue that all claims against the Sacramento County Sheriff should

14    be dismissed because the Sheriff is only sued in his official capacity and suits against

15    officials in their official capacity are essentially an action against the entity of which the

16    officer is an agent. Defs. MSJ at 4 (ECF No. 49-1).

17    Here, suing the Sacramento County Sheriff in his official capacity is effectively a

18    suit against the County of Sacramento. *See Muller v. Sacramento County Sheriff Dept.*,

19    2006 WL 3437894, at *7-8 (E.D. Cal. Nov. 29, 2006). Because Plaintiff also brings

20    claims against the municipal entity (the County), Plaintiff's claims against Sheriff Jones in

21    his official capacity should be dismissed as duplicative. *See Will*, 491 U.S. at 71;

22    *Kentucky*, 473 U.S. at 166. The Court also notes that the FAC does not raise any

23    specific allegations as to Sheriff Jones. *See* FAC. Defendants' motion for summary

24    judgment as to the Sheriff should be GRANTED.

25

2.    Sacramento County – Section 1983 Claims

26    Plaintiff also brings claims against Sacramento County. Under *Monell v.*

27    *Department of Social Services of City of New York*, 436 U.S. 658 (1978), "[a]

28

government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell*, 436 U.S. at 694). There is no respondeat superior liability under § 1983. *Monell*, 436 U.S. at 691-94. A policy is a deliberate choice to follow a course of action made by officials responsible for establishing final policy. *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992). A custom is a widespread practice that is "so permanent and well-settled as to constitute a custom or usage with the force of law." *Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1147 (E.D. Cal. 2009) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). Liability for an improper custom may not be premised on isolated or sporadic incidents, but rather it must be founded on practices of "sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). After establishing one of the methods of liability, "a plaintiff must also show that the circumstance was (1) the cause in fact and (2) the proximate cause of the constitutional deprivation." *Id.*

Defendants argue that all claims against the County must fail and should be dismissed because Defendant McCune had probable cause to arrest Plaintiff so there was no constitutional violation, and there is no evidence or facts demonstrating that a policy or custom caused any alleged constitutional injury. Defs. MSJ at 4. Defendants also argue that the County cannot be held liable for the acts of its employees. *Id.* at 12-13.

Here, the County cannot be held liable under a respondeat superior theory on Plaintiff's § 1983 claims, *see Monell*, 436 U.S. at 691, and Plaintiff has offered no evidence, arguments, or facts demonstrating that the County engaged in a pattern, custom, or practice that deprived him of any rights. In addition, as described above, even if the Sacramento County Sheriff's Office had been adequately named as a separate defendant in the FAC, the same analysis for the County would also apply to the Sheriff's

14

1  Office. The Court separately analyzes the supervisory liability and intentional infliction of

2  emotional distress claims below.

3  ###           3.    Sacramento County District Attorney Schubert

4  Plaintiff brings claims against Sacramento County District Attorney Schubert in

5  her official capacity. Defendants argue that District Attorney Schubert in her official

6  capacity is immune from suit under the Eleventh Amendment and because she is

7  entitled to prosecutorial immunity. Defs. MSJ at 9, 11-12. Defendants state that the

8  District Attorney did not function as anything other than a state advocate and that the

9  FAC does not contain any facts that she did. *Id.* at 9. Further, Defendants also argue

10 that the District Attorney was not the prosecutor in Plaintiff's criminal case. *Id.*

11 Prosecutors are afforded immunity from civil suits under the Eleventh Amendment

12 and based on prosecutorial immunity. The Eleventh Amendment provides immunity to

13 state agencies and state actors from suit in federal court for actions taken in their official

14 capacity. *Robichequx v. Cnty. of Orange*, 2024 WL 5001487, at *4 (C.D. Cal. Sept. 27,

15 2024) (citing *Greenlaw v. County of Santa Clara*, 125 F. App'x 809, 810 (9th Cir. 2005)

16 and *Taylor v. Garcetti*, 55 F. App'x 853, 854 (9th Cir. 2003)); *see also Edelman v.*

17 *Jordan*, 415 U.S. 651, 662-63 (1974). The Ninth Circuit has held that under California

18 law, a county district attorney acts as a state official when deciding whether to prosecute

19 an individual. *Weiner v. San Diego Cnty.*, 210 F.3d 1025, 1030-31 (9th Cir. 2000).

20 Further, prosecutors are absolutely immune from civil suits for damages under

21 § 1983 which challenge activities related to the initiation and presentation of criminal

22 prosecutions. *Imbler v. Pachtman*, 424 U.S. 409, 424-28, 431 (1976). Determining

23 whether a prosecutor's actions are immunized requires a functional analysis. The nature

24 of the challenged acts, not the motivation underlying them, determines whether absolute

25 immunity applies. *Ashelman v. Pope*, 793 F.2d 1072, 1076, 1078 (9th Cir. 1986) (en

26 banc). The prosecutor's quasi-judicial functions, rather than administrative or

27 investigative functions, are absolutely immune. Thus, even charges of malicious

28 prosecution, falsification of evidence, coercion of perjured testimony and concealment of

1  exculpatory evidence will be dismissed on grounds of prosecutorial immunity. *See*

2  *Stevens v. Rifkin*, 608 F. Supp. 710, 728 (N.D. Cal. 1984).

3      Here, the District Attorney in her official capacity is entitled to Eleventh

4  Amendment immunity from suit. As the District Attorney, Schubert was an official of the

5  state to the extent she decided whether to prosecute Plaintiff's case, *see Weiner*, 210

6  F.3d at 1028, and thus entitled to Eleventh Amendment immunity.

7      Though the FAC does not make any specific allegations related to the District

8  Attorney and Plaintiff presents no evidence of the District Attorney's involvement in

9  Plaintiff's prosecution, even if such evidence had been presented, the District Attorney

10  would be entitled to prosecutorial immunity for her actions in bringing a criminal claim

11  against Plaintiff. The Court notes that the FAC also alleges that the judge in Plaintiff's

12  criminal proceeding said that "Defendants lacked probable cause to bring the claims

13  pertaining to the criminal proceeding." FAC at 9. Plaintiff's allegations in his unverified

14  FAC cannot be considered as evidence at summary judgment, *see Moran v*, 447 F.3d at

15  759-60, and Plaintiff has provided no competent evidence that the state court made such

16  a finding. Regardless, even if Plaintiff presented evidence that the state court found the

17  prosecution lacked probable cause, the District Attorney would still be entitled to

18  prosecutorial immunity for her actions as a prosecutor to bring a criminal claim against

19  Plaintiff.

20      In conclusion, the District Attorney in her official capacity is entitled to both

21  Eleventh Amendment immunity and prosecutorial immunity. *See Greenlaw*, 125 F. App'x

22  at 810; *Taylor*, 55 F. App'x at 854. Defendants' motion for summary judgment as to the

23  District Attorney should be GRANTED.

24      **D.    Fourth Amendment False Arrest Claim**

25      The false arrest claim is brought against Deputy McCune, Sheriff Jones, and the

26  County. Because the Court has already found that the claims against Sheriff Jones

27  cannot proceed and the County is not liable under *Monell*, the Court focuses its analysis

28  of the false arrest claim as to Deputy McCune.

1        1.    Legal Standards for Fourth Amendment Claims

2        Claims for wrongful arrest under Section 1983 are analyzed under the Fourth

3    Amendment's prohibition against unreasonable seizures using the framework articulated

4    in *Graham v. Connor,* 490 U.S. 386 (1989). The constitutionality of a seizure turns on

5    whether "officers' actions are 'objectively reasonable' in light of the facts and

6    circumstances confronting them." *Id.* at 397.

7        Weighing heavily on the constitutionality of any arrest is "whether, at the moment

8    the arrest was made, the [officer] had probable cause to make it." *Beck v. Ohio*, 379 U.S.

9    89, 91 (1964). Probable cause exists if the facts and circumstances within an officer's

10   knowledge are "sufficient to warrant a prudent [person] in believing [an individual] had

11   committed or was committing an offense." *Id.* Probable cause is a "fluid concept-turning

12   on the assessment of probabilities in particular factual contexts—not readily, or even

13   usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983).

14   Courts should examine "the events leading up to the arrest, then decide whether these

15   historical facts, viewed from the standpoint of an objectively reasonable police officer,

16   amount to probable cause." *Maryland v Pringle*, 540 U.S. 366, 371 (2003). The arresting

17   officer's subjective intention is immaterial in judging whether his or her actions were

18   reasonable under the Fourth Amendment. *Graham*, 490 U.S. at 397.

19       In the Fourth Amendment context of a § 1983 action, the need to establish the

20   facts underlying the reasonableness of a seizure generally mean that probable cause is

21   a question for the jury. *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994). "The

22   mere existence of video footage of the incident does not foreclose a genuine factual

23   dispute as to the reasonable inferences that can be drawn from that footage." *Vos v. City*

24   *of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018). Thus, the Ninth Circuit has long

25   held that, in the context of civil cases, summary judgment is appropriate only if "no

26   reasonable jury could find that the officers did or did not have probable cause to arrest."

27   *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984).

28   / / /

2.    Analysis

The Ninth Circuit has held that a police report indicating the vehicle was stolen provides probable cause to believe the driver has stolen the vehicle or is knowingly operating a stolen vehicle. *Rohde v. City of Roseburg*, 137 F.3d 1142, 1144 (9th Cir. 1998); *Lipton v. United States*, 348 F.2d 591, 594 (9th Cir. 1965) (holding a stolen vehicle report is sufficient basis to arrest the driver); *see also Herwick v. Budget Rent A Car Sys. Inc.*, 2011 WL 13213607, at *6 (C.D. Cal. Mar. 8, 2011) (finding probable cause to arrest plaintiff based on a police report).

Defendants argue that Plaintiff's false arrest claim fails because Defendant McCune had probable cause to arrest Plaintiff. Defs. MSJ at 5. In his opposition, Plaintiff argues that no probable cause exists because his arrest was based on false information that the vehicle was stolen, and a false report. Pl. Opp'n at 5.

Defendant McCune arrested Plaintiff after he received a "hit" from the LPR system that the vehicle Plaintiff was driving was stolen. McCune Decl. ¶ 5. McCune confirmed with dispatch that the vehicle was reported stolen, and that it was still stolen when he pulled Plaintiff over. *Id.* ¶¶ 13-14. McCune has met his initial burden to demonstrate the absence of a genuine issue of material fact. The burden shifts to Plaintiff to establish that there is a genuine issue of material fact, and Plaintiff must tender evidence of specific facts through affidavits or admissible discovery material, and may not rely on the allegations in his pleadings. *See* Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11.

Plaintiff has presented no evidence to dispute that McCune arrested Plaintiff based on a report that the vehicle Plaintiff was driving was stolen. Plaintiff actually concedes this fact and even includes the police report indicating that the vehicle was stolen on June 3, 2020. *See* Pl. Opp'n at 5 & Exhs. at 32-33 (ECF No. 55). Though Plaintiff argues that he did not steal the vehicle and the stolen vehicle report was a false report, *see* Pl. Opp'n at 5, Plaintiff has presented no evidence that the report was false or that McCune arrested Plaintiff despite knowing the report was false. Plaintiff also does not dispute that McCune asked Plaintiff whether he had proof of vehicle ownership

1  paperwork inside the vehicle, and Plaintiff responded that he did not. McCune Decl.

2  ¶ 21.

3      It is therefore undisputed that the vehicle Plaintiff was driving at the time McCune

4  arrested Plaintiff was reported stolen and that McCune arrested Plaintiff based on this

5  report. Accordingly, no reasonable jury could find that McCune did not have probable

6  cause to arrest Plaintiff. *See Rohde*, 137 F.3d at 1144; *Lipton*, 348 F.2d at 594.

7  Therefore, Defendants' motion for summary judgment on Plaintiff's claim for false arrest

8  should be GRANTED.

9      **E.    Malicious Prosecution Claim**

10     Plaintiff brings a malicious prosecution claim under § 1983 against all defendants.

11  Because the Court has already found that the claims against Sheriff Jones cannot

12  proceed, the County is not liable for § 1983 claims under *Monell*, and District Attorney

13  Schubert has prosecutorial and Eleventh Amendment immunity, the Court focuses its

14  analysis of the malicious prosecution claim as to Deputy McCune.

15     To claim malicious prosecution, a plaintiff must establish "the defendants

16  prosecuted h[im] with malice and without probable cause, and that they did so for the

17  purpose of denying h[im] equal protection or another specific constitutional right." *Lacey*

18  *v. Maricopa County*, 693 F.3d 896, 919 (9th Cir. 2012) (quoting *Freeman v. City of Santa*

19  *Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995)); *see also Mills v. City of Covina*, 921 F.3d

20  1161, 1169 (9th Cir. 2019) (noting federal courts rely on state common law for the

21  general elements of malicious prosecution). To state a claim for malicious prosecution

22  under California law, a plaintiff must show that the prior action "(1) was initiated by or at

23  the direction of the defendant and legally terminated in the plaintiff's favor, (2) was

24  brought without probable cause, and (3) was initiated with malice." *Siebel v. Mittlesteadt*,

25  41 Cal.4th 735, 740 (2007).

26     Defendants argue that Plaintiff's claim for malicious prosecution against McCune

27  should fail because McCune had probable cause to arrest Plaintiff. Defs. MSJ at 10-11.

28  Usually the decision to file a criminal complaint will preclude liability for the police officer

19

1    who participated in the investigation or whose report initiated the proceeding, because

2    the decision is presumed to result from an independent decision of the prosecutor.

3    *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004). If, however, a plaintiff

4    can show an officer applied improper pressure on the prosecutor, knowingly provided

5    misinformation, concealed exculpatory information, or otherwise engaged in wrongful

6    conduct that led to the legal proceeding, then the presumption of prosecutorial

7    independence may be rebutted. *Id.* at 1067-68. Only then can a malicious prosecution

8    claim proceed against the officer. *See Smith v. Almada*, 640 F.3d 931, 938 (9th Cir.

9    2011) (stating that an officer may be liable for malicious prosecution if they wrongfully

10   caused the prosecution to occur).

11       As discussed above, Defendant McCune had probable cause to arrest Plaintiff. In

12   addition, Plaintiff has presented no evidence that McCune applied improper pressure to

13   the prosecutor, knowingly provided misinformation, concealed exculpatory information,

14   or otherwise engaged in wrongful conduct that led to the criminal proceedings. Also as

15   discussed above, Plaintiff may not rely on the allegations in his unverified FAC that the

16   judge at the criminal proceeding said that Defendants lacked probable cause to bring the

17   criminal case. *See* FAC at 9. Plaintiff must tender evidence of specific facts through

18   affidavits or admissible discovery material. *See* Fed. R. Civ. P. 56(c); *Matsushita*, 475

19   U.S. at 586 n.11. Therefore, Defendants' motion for summary judgment on Plaintiff's

20   malicious prosecution claim should be GRANTED.

21       **F.    Supervisory Liability Claim**

22       Plaintiff's supervisory liability claim for the failure to train was raised against the

23   "supervisory defendants," which the Court construed to be Sheriff Jones, the County,

24   and District Attorney Schubert. Because the Court has already found that the claims

25   against Sheriff Jones cannot proceed and District Attorney Schubert has prosecutorial

26   and Eleventh Amendment immunity,[5] the Court focuses its analysis of the supervisory

27

28
_____
[5]  Even if the supervisory liability claim did proceed against Sheriff Jones and District
Attorney Schubert, summary judgment should be granted for Defendants Jones and

1   liability claim as to the County.

2       A municipality can be found liable for the actions of its agents where there is a

3   failure to train. *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *Hepner v. County of*

4   *Tulare*, 2024 WL 922891, at *4 (E.D. Cal. Mar. 1, 2024). A municipality's decision not to

5   train their employees about their legal duties to avoid violating citizens' rights may rise to

6   the level of an official government policy. *Connick*, 563 U.S. at 61. "[T]he inadequacy of

7   police training may serve as the basis for § 1983 liability only where the failure to train

8   amounts to deliberate indifference to the rights of persons with whom the police come

9   into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). A plaintiff alleging a

10  policy of failure to train must show that (1) he was deprived of a constitutional right;

11  (2) the entity had a training policy that amounts to deliberate indifference to the

12  constitutional rights of the individuals its police officers are likely to come into contact

13  with, and (3) the constitutional injury would have been avoided had the county properly

14  trained its officers. *Dillman v. Tuolumne*, 2013 WL 1907379, at *14 (E.D. Cal. May 7,

15  2013) (citing *Blankenhorn v. City of Orange*, 485 F.3d 463, 485 (9th Cir. 2007)). In the

16  context of a failure to train claim, the Supreme Court has found that to show deliberate

17  indifference, the municipal actor must disregard a known or obvious consequence of his

18  action, which ordinarily requires that there be a pattern of similar constitutional violations

19  by untrained employees. *Connick*, 563 U.S. at 61-62. However, "in a narrow range of

20  circumstances, a pattern of similar violations might not be necessary to show deliberate

21  indifference." *Id.* at 63 (citation and quotation marks omitted).

22      Summary judgment should be granted for the County on the supervisory liability

23  failure to train claim because there is a complete failure of proof. *See Celotex Corp.*, 477

24  U.S. at 323. As described above, Deputy McCune had probable cause to arrest Plaintiff.

25  _____

26  Schubert because Plaintiff does not present any evidence of their personal involvement
    in the underlying arrest, prosecution, or any failure to train. *See Keates*, 883 F.3d at

27  1242-43. Plaintiff does not present any evidence of any wrongful conduct by either
    supervisor, or any causal connection between the supervisor's wrongful conduct and the

28  alleged constitutional deprivation. *See id.*

1  Plaintiff has not provided any evidence to create a genuine dispute of material fact as to

2  any element for a failure to train claim against the County. *See* Pl. Opp'n. In addition,

3  Plaintiff's allegations in his unverified FAC cannot be considered as evidence at

4  summary judgment. *See Moran v. Selig*, 447 F.3d at 759-60. But even if Plaintiff's FAC

5  had been verified and could be considered as evidence, the FAC's allegations are

6  insufficient because Plaintiff has not sufficiently alleged any of the elements for a failure

7  to train claim. *See* FAC; *Dillman*, 2013 WL 1907379 at *14. No rational trier of fact could

8  find for Plaintiff on this claim against the County.

9        Thus, Defendants' motion for summary judgment should be GRANTED on

10  Plaintiff's supervisory liability claim.

11        **G.**    **Intentional Infliction of Emotional Distress Claim**

12        Plaintiff brings an intentional infliction of emotional distress claim against all

13  defendants. Because the Court has already found that the claims against Sheriff Jones

14  cannot proceed and District Attorney Schubert has prosecutorial and Eleventh

15  Amendment immunity,[6] the Court focuses its analysis of the intentional infliction of

16  emotional distress claim as to Deputy McCune and the County.

17        As an initial matter, Defendants argue that the Court should exercise

18  supplemental jurisdiction over Plaintiff's California state law claim of intentional infliction

19  of emotional distress. Defs. MSJ at 13. The district court has discretion over whether to

20  exercise supplemental jurisdiction over state law claims even if all of the federal law

21  claims have been dismissed. *Lacey*, 693 F.3d at 940; *see* 28 U.S.C. § 1367(c)(3). The

22  decision to retain or decline jurisdiction must be made in light of "the objectives of

23  economy, convenience and fairness to the parties, and comity." *Trustees of Constr.*

24  *Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape & Maintenance,*

---

25  [6]  Even if the intentional infliction of emotional distress claim did proceed against Sheriff

26  Jones and District Attorney Schubert, summary judgment should be granted for
Defendants Jones and Schubert because Plaintiff does not present any evidence of any

27  conduct by these Defendants, let along evidence of outrageous or extreme conduct or
their intent, which are required elements. *See Argawal v. Johnson*, 25 Cal.3d 932, 946

28  (1979).

1  *Inc.*, 333 F.3d 923, 925 (9th Cir. 2003). Here, the Court exercises supplemental

2  jurisdiction over Plaintiff's state law claim in the interest of judicial economy and the

3  convenience and fairness to the parties because Plaintiff's intentional infliction of

4  emotional distress claim is based on the same nucleus of facts underlying the federal

5  law claims. *See id*.

6  To prevail on a claim of intentional infliction of emotional distress under California

7  law, a plaintiff must show:  (1) outrageous conduct by the defendant; (2) intention to

8  cause or reckless disregard of the probability of causing emotional distress; (3) severe

9  emotional suffering; and (4) actual and proximate causation of the emotional distress.

10  *Argawal*, 25 Cal.3d at 946. Conduct is "outrageous" when it is "so extreme as to exceed

11  all bounds of that usually tolerated in a civilized community." *Davidson v. City of*

12  *Westminster*, 32 Cal.3d 197, 209 (1983). The defendant's conduct must be directed at,

13  or occur in the presence of, the plaintiff, and defendant must have been aware of the

14  plaintiff's presence. *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 1001-02

15  (1993).

16  As discussed above, Deputy McCune had probable cause to arrest Plaintiff. The

17  burden then shifts to Plaintiff, who failed to provide any evidence that McCune's actions

18  in arresting Plaintiff were "extreme" or "outrageous" conduct that exceeds all bounds

19  tolerated in a civilized community, or any evidence of McCune's intent or reckless

20  disregard to cause emotional distress, which are required elements for an intentional

21  infliction of emotional distress claim. *See Argawal*, 25 Cal.3d at 946; *Davidson*, 32

22  Cal.3d at 209. There is no genuine dispute of material fact, and no rational trier of fact

23  could find for Plaintiff on this claim. Summary judgment should be granted to Deputy

24  McCune on this claim.

25  Turning to the claim against the County, Plaintiff is suing the County for the

26  actions of its employees. *See Paternostro v. City of Lodi*, 2021 WL 1985438, at *3 (E.D.

27  Cal. May 18, 2021). Under California Government Code § 815.2, a public entity may be

28  vicariously liable for the actions of its employee acting within the scope of his

1    employment if the action would give rise to a cause of action against the employee. Cal.

2    Gov. Code § 815.2(a); *see Black v. City of Blythe*, 562 F. Supp. 3d 820, 829 (C.D. Cal.

3    2022). Vicarious liability does not attach if the employee is immune. Cal. Gov. Code

4    § 815.2(b). Here, Plaintiff may raise his intentional infliction of emotional distress claim

5    against the County because Deputy McCune is not immune from potential liability for

6    intentional infliction of emotional distress. *See Black*, 562 F. Supp. 3d at 829; *Hall v. City*

7    *of Fremont*, 520 F. App'x 609, 612 (9th Cir. 2013) (unpublished) (holding the district

8    court erred when it found the city employee defendant immune from an intentional

9    infliction of emotional distress claim).

10        Because Plaintiff's intentional infliction of emotional distress claim against the

11    County is based on Deputy McCune's conduct, the County is also entitled to summary

12    judgment on this claim. There is no genuine dispute of material fact, and no rational trier

13    of fact could find for Plaintiff on this claim.

14        Therefore, Defendants' motion for summary judgment should be GRANTED on

15    Plaintiff's claim of intentional infliction of emotional distress.

16        **H.    Qualified Immunity**

17        Qualified immunity protects government officials "from liability for civil damages

18    insofar as their conduct does not violate clearly established statutory or constitutional

19    rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S.

20    223, 231 (2009) (quotations omitted). This protection exists even if the officer's actions

21    resulted from "'a mistake of law, a mistake of fact, or a mistake based on mixed

22    questions of law and fact.'" *Id*. (quotations omitted). Determining whether officials are

23    owed qualified immunity involves two inquiries: (1) whether, taken in the light most

24    favorable to the party asserting the injury, the facts show the official's conduct violated a

25    constitutional right; and (2) if so, whether the right was clearly established in light of the

26    specific context of the case. *See id*. at 236 (noting the two factors need not be

27    considered in sequence). The jury determines the factual question of whether a

28    constitutional right was violated, while the judge determines the legal question of

1    whether the right was clearly established. *Tortu v. Las Vegas Metro. Police Dep't*, 556

2    F.3d 1075, 1085 (9th Cir. 2009); *see also Torres v. City of Madera*, 648 F.3d 1119, 1123

3    (9th Cir. 2011).

4         A right is "clearly established" when, "at the time of the challenged conduct, the

5    contours of a right are sufficiently clear that every reasonable official would have

6    understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731,

7    741 (2011) (quotations omitted). This is an objective standard, and "the defendant's

8    subjective understanding of the constitutionality of his or her conduct is irrelevant."

9    *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011). For a

10   constitutional right to be clearly established, "a court must define the right at issue with

11   specificity and not at a high level of generality," *Gordon v. Cnty. of Orange*, 6 F.4th 961,

12   968 (9th Cir. 2021) (quotations omitted), and "existing precedent must have placed the

13   statutory or constitutional question beyond debate," *Foster v. City of Indio*, 908 F.3d

14   1204, 1210 (9th Cir. 2018) (per curiam). However, the court need not identify an identical

15   prior action. *Scott v. Cnty. of San Bernardino*, 903 F.3d 943, 951 (9th Cir. 2018).

16        The plaintiff bears the burden of proving that the right allegedly violated was

17   clearly established at the time of the violation. *Gordon*, 6 F.4th at 969. However, the

18   court will "draw on [its] 'full knowledge' of relevant precedent rather than restricting [its]

19   review to cases identified by the plaintiff." *Id.*

20        Defendants argue that Deputy McCune is entitled to qualified immunity. Defs.

21   MSJ at 7-9, 10. Because the Court found that there was no constitutional violation, the

22   Court will not address whether McCune is entitled to qualified immunity.

23   **IV.    CONCLUSION**

24        In conclusion, IT IS HEREBY ORDERED that:

25        1.    Plaintiff's motion to stay (ECF No. 55) is DENIED as moot; and

26        2.    Plaintiff's motion to correct clerical errors (ECF No. 63) is GRANTED IN

27              PART AND DENIED IN PART. The Clerk is directed to (a) correct the

28              docket entry to reflect September 6, 2024 as the filing date for ECF No. 59,

1   Plaintiff's Notice of Lodging video/audio files; (b) separately file "Plaintiff's

2   Exhibits #3 in Support of Opposition to Defendant's Motion for Summary

3   Judgment," which is currently filed as ECF No. 55 at pages 5-152, as a

4   separate docket entry with a filing date of August 28, 2024; and (c) remove

5   what is currently filed at ECF No. 55 at pages 5-152 from ECF No. 55. The

6   remainder of Plaintiff's motion to correct clerical errors is DENIED.

7   Further, based upon the findings above, it is RECOMMENDED that:

8   1.     Defendants' motion for summary judgment (ECF No. 49) be GRANTED;

9   2.     Judgment be entered for Defendants; and

10  3.     The Clerk of the Court be directed to CLOSE this case.

11  These findings and recommendations are submitted to the United States District

12  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within

13  14 days after being served with these findings and recommendations, any party may file

14  written objections with the Court and serve a copy on all parties. This document should

15  be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any

16  reply to the objections shall be served on all parties and filed with the Court within 14

17  days after service of the objections. Failure to file objections within the specified time

18  may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449,

19  455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

20

21  Dated:  February 18, 2025

22  _____
    CHI SOO KIM

23  UNITED STATES MAGISTRATE JUDGE

24  5, iliy.1305.22

25

26

27

28

26